UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE Division

| | |
|---|---|
| Charles Casey<br>Jeannette Casey<br>7256 Mendell Way<br>Melbourne, FL 32940-5921<br><br>    Plaintiff<br><br>Vs.<br><br>Geek Squad®<br>*Subsidiary*<br>Best Buy Stores, L.P.<br>Suite 423<br>526 King Street<br>Alexandria, Virginia 22314<br><br>    Defendant<br><br>Serve on:<br>Corporation Trust, Inc.<br>351 W. Camden Street<br>Baltimore, MD 21201 | Case No.<br><br><br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiffs Charles and Jeannette Casey, by and through their attorney, Sandra B. Minton, Esquire, Robert K. Nead, Esquire, and Nead, Minton & Ferris, LLP, respectfully file this Complaint against defendant to recover compensatory damages and reasonable attorney fees and costs. This Complaint is filed pursuant to FRCP 8(a)(1) and 28 USCS 1332, and for reasons Plaintiffs state the following:

I. PARTIES AND JURISDICTION

1. Plaintiffs Charles and Jeannette Casey are domiciled in the State of Florida.

2. Defendant's U.S. Headquarters is located at 7601 Penn Ave. S. Building D6 Richfield, MN 55423 and its principal office is located at 526 King Street, Suite 423, Alexandria, Virginia 22314, and is an unincorporated entity which is and was at all times hereafter mentioned, engaged in the business of computer analysis, maintenance, and repair and other computer-related services, physically located within the Best Buy Store at 1717 York Road, Timonium, Baltimore County, Maryland.

3. This is a civil action involving, exclusive of interest and costs, a sum in excess of $150,000.

4. This court has jurisdiction over this action pursuant to diversity jurisdiction, FRCP 8 (a)(1) and 28 USC § 1332 (2006) because the plaintiffs are not residents of the same state in which the defendant's principal office is located.

II. STATEMENT OF FACTS

5. On or about September 8, 2007, Plaintiff Charles Casey, who was then living at 10719 Lancewood Road, Cockeysville, MD 21030, presented a computer for analysis and repair to the *Geek Squad* of Best Buys, 1725 York Road, Timonium, Maryland.

6. The computer, an emachine T882, Serial Number QDF5300104073, was diagnosed by members of the Geek Squad with a "serious sign ov [sic] viruses/spyware. Analyzer showed that the machine is at a dangerous

       level." The Geek Squad identified no other operating problem with the computer.

7. Repairs were supposedly limited to removal of these certain identified viruses.

8. The expected time for completion of the removal of the identified viruses was approximately September 11, 2007.

9. The computer was not repaired and returned to the Plaintiff until Monday, October 22, 2007, despite numerous requests.

10. The Geek Squad offered no explanation for its failure to make the necessary repairs by or about September 11, 2007, as agreed and promised. The Geek Squad did indicate to Plaintiff that his computer required a new R/W CD drive, which was installed while Plaintiff waited. The Squad offered no explanation as to any problems that Plaintiff may have encountered when the computer was reconnected at his home. And other than the supposed need to replace the CD drive, Defendant Geek Squad offered no explanation as to any additional problems when the computer was being repaired.

11. After picking up the supposedly repaired computer on October 22, 2007, Plaintiff returned to his home and immediately placed the computer in the exact location where it was located prior to the alleged repairs and plugged the computer into the same electrical outlet where it had been plugged, without incident.

12. At no time between September 11, 2007, when the computer was

presented to the Geek Squad, and October 22, 2007, when the computer was allegedly repaired by the Geek Squad and returned to Plaintiff for his routine use, were any changes made to the area where the computer was previously located.

13. During that same time period, no changes were made to the electrical system within Plaintiff's home.

14. During that same time period, there were no electrical surges within Plaintiff's home, as was confirmed by a utility representative shortly after the incident in question.

15. Shortly after his arrival home with the allegedly repaired computer, Plaintiff attempted to re-plug the printer that had previously been connected to the computer. As he did so, and while touching the computer, Plaintiff received a severe electric shock that ran through his body, with tingling in his right hand up to his shoulder, across his tongue and down his left arm.

16. Plaintiff was treated at an Emergency Room for a "severe electric shock" that resulted in bilateral shoulder dislocations and severe pain.

17. The severe electrical shock injury resulted in surgery to Plaintiff's left shoulder, followed by physical therapy for both the right and left shoulder injuries for a considerable length of time.

18. A right rotator cuff injury that may have existed at the time of the shock was aggravated, necessitating still another surgery.

19. The Plaintiff was 73 years of age at the time of the occurrence, retired

from his profession as a pastor of a local church, but still quite active in various activities at his home, within his community and with his local church.

20. The electrical shock that ravaged Plaintiff's body caused considerable bruising and discoloration, a severe lack of mobility and a reduced range of motion in both arms so that Plaintiff was unable to complete even the most routine task.

21. Because of the injuries, Plaintiff's left arm had to be pushed back into its socket on three occasions. As a result of the shock he received, Plaintiff was unable to use either arm for several weeks and his arms were immobilized to encourage healing.

22. During the time period that Plaintiff Charles Casey's arms were immobilized and he was unable to care for his own needs, Plaintiff Jeannette Casey, Plaintiff's wife, assisted and aided Charles Casey with all personal tasks.

23. Even after Plaintiff Charles Casey's arms were no longer immobilized, he had extremely limited range of motion and he was still unable to complete most physical tasks.

24. At the time of the incident noted herein, Jeannette Casey, Plaintiff's wife, was caused to assist and care for Plaintiff Charles Casey, including bathing, feeding, dressing, and otherwise performing personal duties that had previously been completed by Charles Casey. As Jeannette Casey

was herself, at the time, experiencing considerable health problems unrelated to the present incident, the additional care necessary for the care of Charles Casey complicated and stressed her own well-being. The Caseys often had to rely on outside assistance.

25. Plaintiff Charles Casey's brain and nervous system were greatly shocked and their functions impaired. Plaintiff remained in pain for several months and was disabled. Plaintiff continues to have restricted use of his right arm to the present time.

26. Plaintiff has now reached his maximum physical improvement but has not returned to his pre-shock physical and/or medical condition.

27. As a further result of the injuries sustained by Plaintiff there is a reasonable probability that Plaintiff will require further medical care and attention and will incur future reasonable and necessary expenses for such care. In addition, it is expected that Plaintiff's right arm will atrophy..

28. Presently, Plaintiff's range of motion in his right arm is severely restricted and thus he is limited in all activities. Plaintiff's life style has been diminished because of the limitations and the stress caused by his injuries.

29. As a result of his injuries Plaintiff was caused to experience extensive hospital treatment, medical care and physical therapy and has incurred significant medical expenses and to lose time from his daily pursuits. He continues to experience significant limitations in activities in which he was previously able to participant. As a result of his injuries, Plaintiff has

        become quite cautious about the use of any computer and never again used the identified computer.

30. In early 2009, because Charles Casey was no longer able to maintain the two-story home he and his wife Jeannette had lived in for many years, the Caseys moved to Melbourne, Florida, to a single level, maintenance free home. All outside tasks are cared for by others. Prior to the severe electric shock caused by the Defendant, the Caseys had not discussed such a move.

### III. CAUSES OF ACTION

*Negligence and/or Negligent Omission*

31. Plaintiff Charles Casey incorporates herein by reference the facts and allegations of paragraphs 1 – 30.

32. Defendant Geek Squad had a duty to repair the Plaintiff's identified computer in such a manner as to restore the computer to its pre-repair condition, as agreed and as warranted, and without danger to the Plaintiff. The Geek Squad breached its duty when it negligently repaired the identified computer and/or otherwise failed to properly restore the computer to its pre-repair working condition. At no time before leaving the computer with the Geek Squad did the Caseys experience any electrical charges or related injuries. But for the action or inaction of the Geek Squad, Charles Casey would not have experienced any electrical shock. As the result of this negligence or negligent omission, Plaintiff

      sustained extensive injuries and mental anguish and further experienced significant damages and losses.

33. All of the damages and losses Plaintiff suffered were directly and proximately caused by the negligence or negligent omission of the Defendant without any contribution on the part of the Plaintiff.

*Breach of Warranty of Fitness for Use*

34. Plaintiff Charles Casey incorporates herein by reference the facts and allegations of paragraphs 1-33.

35. The Geek Squad holds itself out as a provider of service to consumers relating to computer repairs and maintenance. In doing so, the Geek Squad assures, guarantees or promises that its services will provide a working computer. Plaintiff had a reasonable expectation that the computer returned to him would be in working condition. The Geek Squad breached its warranty when it returned a defective computer to Plaintiff, such defect causing Plaintiff to experience an electric shock to his whole body. As a result of Geek Squad's breach, Plaintiff sustained extensive injuries and mental anguish.

36. All of the damages and losses Plaintiff suffered were directly and proximately caused by Defendant's breach of warranty, without any contribution on the part of the Plaintiff.

*Loss of Consortium*

37. Plaintiff Jeannette Casey incorporates herein by reference the facts and allegations of paragraphs 1 – 36.

38. As a result of Defendant's negligence, for more than a year Charles Casey was no longer able to perform any duties around the home, or to provide for his own care, or to share activities with his wife of over fifty years, Jeannette Casey.  To this date, Charles Casey continues to be severely limited in his abilities.  As a result of Defendant's negligence and/or negligent omission, Jeannette Casey was caused to endure and experience additional and extreme stress to her already compromised health and well-being.  She became the care taker rather than the one being cared for.

## IV.  RELIEF REQUESTED

*Wherefore*, Plaintiffs Charles and Jeannette Casey request judgment against Defendant in the amount of Four Hundred Fifty Thousand ($450,000) in compensatory damages, costs, fees, such interest as allowable by law, and for any further relief as this Court may deem appropriate.

## V.  JURY DEMAND

Plaintiffs Charles and Jeannette Casey demand a jury for all triable issues.

Respectfully submitted,

_____
Sandra B. Minton, Esquire

_____
Robert K. Nead, Esquire
Nead, Minton & Ferris, LLP
305 W. Chesapeake Avenue
Suite 325
Towson, MD 21204
410-337-7704
*Counsel to Plaintiffs
Charles and Jeannette Casey*